**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SHIRLEY REE SMITH,
             *Petitioner-Appellant,*

v.

DEBORAH L. PATRICK,* Warden,
             *Respondent-Appellee.*

No. 04-55831

D.C. No.
CV-01-04484-ABC

OPINION

On Remand from the
United States Supreme Court

Filed December 4, 2007

Before: Harry Pregerson and William C. Canby, Jr.,
Circuit Judges, and Edward C. Reed, Jr.,** District Judge.

Per Curiam Opinion

---

*Deborah L. Patrick is substituted for her predecessor, Gwendolyn Mitchell, as Warden. Fed. R. App. P. 43(c)(2).

**The Honorable Edward C. Reed, Jr., Senior United States District Judge for the District of Nevada, sitting by designation.

## COUNSEL

Michael J. Brennan, Manhattan Beach, California, for the petitioner-appellant.

Kristofer Jorstad, Deputy Attorney General, Los Angeles, California, for the respondent-appellee.

**OPINION**

PER CURIAM:

Shirley Ree Smith was convicted in California state court of assault on a child resulting in death. The state court of appeal affirmed her conviction, and the California Supreme Court denied review. Smith then filed a federal habeas petition claiming that her conviction violated due process because the evidence was constitutionally insufficient. The district court denied the petition and Smith appealed. We reversed and directed issuance of the writ. *Smith v. Mitchell*, 437 F.3d 884 (9th Cir. 2006). We held that no rational trier of fact could have found beyond a reasonable doubt that Smith caused the child's death, and that the state court's affirmance of Smith's conviction was an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979). *Smith*, 437 F.3d at 890.

The State's petition for panel and en banc rehearing was denied, 453 F.3d 1203 (9th Cir. 2006), and the State filed a petition for certiorari in the Supreme Court. While that petition was pending, the Supreme Court decided *Carey v. Musladin*, 127 S. Ct. 649 (2006). It then granted certiorari in this case, vacated our judgment, and remanded "for further consideration in light of *Carey v. Musladin* . . . ." *Patrick v. Smith*, 127 S.Ct. 2126 (2007).

We ordered supplemental briefing by the parties, and have now reconsidered our decision as directed. We conclude that our earlier decision is unaffected by *Musladin*, and we accordingly reinstate our judgment and opinion.

I

[1] The crucial issue in *Musladin*, as here on remand, is whether a state court's affirmance of a conviction "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[1] In *Musladin*, the defendant was convicted of murder in a trial during which members of the victim's family sat in the front row of the spectators' gallery wearing buttons displaying a photograph of the victim. On federal habeas review, this court ordered the writ to issue, holding that the state court had applied a test of inherent prejudice that was contrary to or an unreasonable application of Supreme Court precedent, *Estelle v. Williams*, 425 U.S. 501 (1976), and *Holbrook v. Flynn*, 475 U.S. 560 (1986). *Musladin v. Lamarque*, 427 F.3d 653, 656-58 (2005).

[2] The Supreme Court vacated, holding that the precedent on which the petitioner relied had been confined to government-sponsored conduct. The Supreme Court had never addressed a claim that private-actor courtroom conduct (short of mob domination of a trial) was inherently prejudicial to a fair trial. The effect of spectator conduct therefore was "an open question" in Supreme Court jurisprudence. *Musladin*, 127 S.Ct. at 653. Accordingly, the state court decision had not been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. *Id.* at 654.

## II

[3] We find no comparable problem in this case. We held that the opinion of the prosecution experts that shaking of the infant had caused death was wholly unsupported by the physical evidence. The prosecution witnesses themselves testified that the deceased infant's brain disclosed no evidence to support their view that violent shaking had sheared the brain stem in a manner that caused instantaneous death. The physician who performed the autopsy also testified that further dissec-

---

[1] Section 2254 was amended to its present form by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132 (1996).

tion of the brain would have disclosed no such evidence. There was no dispute that the small amount of bleeding, and the small abrasion on the scalp, could not have caused death. There was, accordingly, a failure of evidence to support the opinion of the expert witnesses that shaking had caused the death. On the whole record, we concluded that the evidence did not meet the standard of *Jackson v. Virginia*: no rational juror considering all of the evidence in the light most favorable to the prosecution could find guilt beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. The evidence was so lacking that we further concluded that affirmance of Smith's conviction was an unreasonable application of *Jackson.*

**[4]** Nothing in the State's failure of evidence takes this case out of the class of cases subject to the test of *Jackson.* Unlike *Musladin*, where the private-actor conduct at issue had never been the subject of Supreme Court consideration, this case presents merely one more instance where the evidence presented by a state is wholly insufficient to permit a constitutional conviction. *Jackson* makes clear that such cases cannot constitutionally stand if the evidence was insufficient "to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson*, 443 U.S. at 316. This standard is not as severe for defendants as that applied in *Thompson v. Louisville*, 362 U.S. 199 (1960), which held it to be a violation of due process to convict on *no* evidence. *Jackson* makes clear that a conviction is unconstitutional even if there is *some* evidence of guilt when all of the evidence, viewed in the light most favorable to the prosecution, does not permit any rational fact-finder to find guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 314-18. Smith's case accordingly falls squarely within *Jackson.* Moreover, the prosecution's evidence falls so far short that it was unreasonable for the state appellate court to conclude that it met the *Jackson* standard.

## III

**[5]** It is true, of course, that the Supreme Court has never had a case where the issue was whether the evidence, expert

and otherwise, was constitutionally sufficient to establish beyond a reasonable doubt that a defendant had shaken an infant to death. But there are an infinite number of potential factual scenarios in which the evidence may be insufficient to meet constitutional standards. Each scenario theoretically could be construed artfully to constitute a class of one. If there is to be any federal habeas review of constitutional sufficiency of the evidence as required by *Jackson*, however, section 2254(d)(1) cannot be interpreted to require a Supreme Court decision to be factually identical to the case in issue before habeas can be granted on the ground of unreasonable application of Supreme Court precedent. The Supreme Court does not interpret AEDPA in such a constrained manner.

> AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced.

*Panetti v. Quartermain*, 127 S. Ct. 2842, 2858 (2007) (internal quotation marks and citations omitted); *see also Van Patten v. Endicott*, 489 F.3d 827, 828 (7th Cir. 2007) ("Neither § 2254 nor *Musladin* limits relief to the precise factual situations addressed in the Supreme Court's previous cases.").[2] Habeas relief is appropriate under the "unreasonable application" prong of section 2254(d)(1) when a state court violates

---

[2]The requirement is different under one scenario of the "contrary to" prong of section 2254(d)(1). A state-court decision is "contrary to" a Supreme Court decision when the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The facts need not be materially indistinguishable, however, for a grant of habeas relief under the "unreasonable application" prong of section 2254(d)(1). *See id.* at 407-08.

the *principle* of clearly-established federal law that has been determined by the Supreme Court:

> A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case certainly would qualify as a decision "involv[ing] an unreasonable application of . . . clearly established Federal law."

*Williams v. Taylor*, 529 U.S. 362, 407-08 (2000) (brackets in original); *see also Abdul-Kabir v. Quarterman*, 127 S. Ct. 1654, 1671 (2007) (holding that "ignoring the fundamental principles established by our most relevant precedents" is a factor leading to a result "contrary to" and "an unreasonable application of" Supreme Court precedent). We conclude, therefore, that Smith's case easily falls within the principle established by *Jackson*, and that the affirmance of Smith's conviction was an unreasonable application of *Jackson*.

[6] We also reject the State's contention that the Supreme Court's recent decision in *Schriro v. Landrigan*, 127 S. Ct. 1933 (2007), requires a more exact congruence between the facts of Smith's case and those of *Jackson*. In *Landrigan,* the Supreme Court held that none of its precedents precluded a state court from denying a claim of ineffective assistance of counsel asserted by a defendant who told the court that he had instructed his attorney not to present mitigation evidence. *Id.* at 1942. The Supreme Court rejected this court's ruling that the state court had unreasonably applied *Wiggins v. Smith*, 539 U.S. 510 (2003), and *Strickland v. Washington*, 466 U.S. 668 (1984), stating that "[n]either *Wiggins* nor *Strickland* addresses a situation in which a client interferes with counsel's efforts to present mitigating evidence to a sentencing court." *Landrigan*, 127 S. Ct. at 1942.

[7] Here again, we fail to see a parallel between *Landrigan* and Smith's case. There was a structural difference between

the ineffective assistance cases on which Landrigan relied and his case, in which he had prevented counsel from presenting mitigation evidence in court. The existing Supreme Court standards of ineffective assistance required tailoring or modification to apply to this new situation. No such adaptation of the *Jackson* standard is required in order to apply it to Smith's case, one of many that simply involves a failure of proof. For the same reasons that we find Smith's case to be unaffected by *Musladin*, we conclude that it also is unaffected by *Landrigan*.

## IV

*Musladin* also pointed out that, to be "determined by the Supreme Court" within the meaning of section 2254(d), the federal law in issue must be established by the holding, as opposed to dicta, of the Supreme Court's decision. *Musladin*, 127 S. Ct. at 653. "The Court's 'holding,' " however, necessarily refers not only to the result reached, but also the rationale necessary to the reaching of that result. "When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996).

**[8]** Although in *Jackson* the Supreme Court ultimately denied relief because the evidence had been sufficient, it reached that result only after settling on the constitutional standard to govern the decision of that question. That standard was that the evidence was sufficient if "*any* trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. That standard, adopted after much discussion, *see id.* at 313-319, was the sole means by which the result was reached. It was not dictum, and to our knowledge has never been treated as dictum. Indeed, the State does not claim it to be dictum in its briefing. Similarly, in *Musladin*, the Supreme Court did not treat the rules of *Williams* and *Flynn* as dicta, even though in both

those cases habeas relief had been denied. We have no difficulty, therefore, in concluding that the constitutional standard announced in *Jackson* qualifies as holding, and not dictum, for purposes of section 2254(d)(1).

## V

**[9]** We conclude, therefore, that our earlier opinion and decision, which held the state court's affirmance of Smith's conviction to be an unreasonable application of *Jackson*, is unaffected by *Musladin*. We therefore reinstate our earlier judgment and opinion, as reported at 437 F.3d 884.

**OPINION AND JUDGMENT REINSTATED.**